THE STATE OF MISSOURI, Respondent, v. JAMES D. SPARROW, Appellant.

Kansas City Court of Appeals, January 16, 1893.

1. **Indictment:** RULE: STATUTORY OFFENSE. An exception contained in the section of the statute defining an offense and constituting part of its description must be negatived in the indictment.

2. **Criminal Law:** INDICTMENT: HUNTING: EXCEPTION. An indictment under section 3900, Revised Statutes, 1889, for unlawful hunting within the inclosure of John Quinn without the consent of John Quinn, the owner, is bad, as it does not charge that it was also without the consent of the person in charge.

3. ———: ILLEGAL HUNTING: FENCE. An inclosure is sufficient for the purpose and objects of section 3900, *supra*, if the fields of several are under a common inclosure, without a partition fence of any kind, lawful or unlawful.

4. ———: ———: ———. An inclosure is sufficient under said section if it makes it apparent that the owner is holding the land to the exclusion of the public and for his own exclusive use, though the fence have a gap down near the public road.

5. ———: ———: MISDEMEANOR: INDICTMENT. Hunting within the inclosure of another without lawful consent is a misdemeanor and may be prosecuted by indictment or information.

*Appeal from the Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED.

*R. S. Matthews* and *Dysart & Mitchell*, for appellant.

*W. H. Sears*, for respondent.

ELLISON, J.—The defendant was indicted and convicted for hunting game within the inclosure of another, contrary to the following section of the statutes of 1889: "Every person who shall be found hunting, with gun or dog, within the inclosure of another, or shall enter the same to catch or kill game of any kind, without the consent of the owner or person in charge of such inclosure, shall, on complaint of such owner or person in charge of such inclosure, be fined not exceeding $10." Revised Statutes, 1889, sec. 3900.

The indictment is attacked as being insufficient to support the prosecution. It is in the following words: "The grand jurors for the state of Missouri, summoned from the body of Macon county, impaneled, charged and sworn, upon their oaths, present that James D. Sparrow, late of the county aforesaid, on the twenty-fourth day of November, 1891, at the said county of Macon, state aforesaid, did unlawfully hunt, with a dog and gun, within the inclosure of one John Quinn, and did unlawfully enter the said inclosure to kill game without the consent of the said John Quinn, the owner of said inclosure, against the peace and dignity of the state."

It is a familiar rule of law that, whenever an exception is contained in the section defining an offense, and constitutes part of the description of the offense sought to be charged, the indictment must negative the exception. *State v. Crenshaw*, 41 Mo. App. 24.

The indictment before us does not fill the requisites of this rule. It negatives that the owner of the

inclosure gave his consent, but, for aught that appears in the pleading, the defendant may have had the consent of the person in charge of the inclosure. It is quite common for some one to be in charge of a farm or inclosure for the owner; such person's consent, under the terms of the statute, would prevent the act of hunting from becoming an offense. So, a tenant might be in the exclusive control, charge and possession of an inclosure as against the owner. In such case the tenant's consent would prevent an offense attaching to the act; and in such case it is more than probable that the owner's consent would not avail the hunter who should go within the inclosure without the tenant's consent. If the indictment had contained an additional allegation that Quinn was in charge of the inclosure, it would have obviated the objection made.

II. Something was said in the record, or at the argument, that this was regarded as a test case upon which other prosecutions depended, and we will, therefore, notice the points presented.

On the trial it appeared that the partition fence between Quinn and one of his neighbors was not a lawful fence and was in very poor condition. This presents no defense to the act charged. The statute on which this prosecution is based does not contemplate that the inclosure shall be made up of a lawful fence. Indeed, it would seem that it would have been a sufficient inclosure, for the purpose and object of this statute, if Quinn and his neighbor's fields had been under a common inclosure, that is, without a partition fence of any kind. Such is not an infrequent occurrence in the agricultural communities of the state.

But in this connection an additional point is made by defendant. It appears that on account of some difficulty another neighbor compelled Quinn to disconnect their fences, thus leaving a gap about four feet

wide exposed to the public road, which Quinn endeavored to watch. This in our opinion did not have the effect to destroy the inclosure according to the true meaning of the statute. One may hunt on the land of another which is in commons, but, when there is such an inclosure as to make it apparent that the owner is holding the land to the exclusion of the general public and for his own exclusive use, it is sufficient to bring it under the protection of the law.

It is next contended that the section of the statute does not authorize an indictment in cases arising under it, since the act is not declared to be a misdemeanor. This objection is not sound. The offense named in the section is such an act as fills the definition of a misdemeanor in section 3971, and, under section 3971, may be recovered either by indictment or information.

On account of the insufficiency of the indictment the judgment will be reversed, and the defendant discharged. All concur.